REPUBLIC INSURANCE CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 19693.   Promulgated September 26, 1928.

*R. W. Mayo, Esq.*, for the petitioner.
*Harold Allen, Esq.*, for the respondent.

OPINION.

LITTLETON : It is claimed by petitioner that assessment and collection of any additional tax are barred by the statute of limitations for the reason that the two written consents are invalid.

It is argued that the consents in question are invalid because the directors did not specifically authorize the execution thereof and that the respondent was charged with notice of the want of authority in Geo. W. Jalonick to make the agreement implied in the consents.

In the performance of his duties with the petitioner, Geo. W. Jalonick signed a great many papers, "principally loans, papers connected with loans, releases, assignments, and frequently other instruments connected with the underwriting end of the business." He also signed " a great many checks."

The inference to be drawn from the testimony of Geo. W. Jalonick is, clearly, that he signed checks, releases, etc., and did many things in the way of business for petitioner not jointly with the president, not both signing the same instruments or papers, but he alone doing this. The interpretation which the corporation and its officers put upon the section of the by-laws that " both officers shall have authority to execute deeds, assignments, releases and other instruments in connection with the conduct of the business of the company," evidently was that the chairman of the board and the president each possessed the authority to " execute deeds, assignments, releases and other instruments in connection with the conduct of the business of the company."

Jalonick signed the consents and affixed the seal of the company thereto in due course of business and the interpretation he put upon his authority to do so was consistent with the authority he had generally exercised and the acts of a similar nature which he was in the habit of performing alone for the corporation. See *American Feature Film Co.*, 11 B. T. A. 1271, in which the Board stated:

\* \* \* The general rules applicable to the determination of the validity of contracts are not applicable in the determination of the validity of the consent to a later determination, assessment, and collection of additional tax

under the various revenue acts. We think Congress used the word "consent" advisedly. To consent implies the idea of acquiescence to a matter of conduct, the assent to the performance of an act or duty in other than the usual or customary manner, or at a time other than that prescribed, and we think a consent to a later determination and assessment of tax of a corporation signed by an officer of the corporation in the regular course of business, although without specific authorization by the board of directors, is valid and effectual to suspend the operation of the statute of limitation for such period as may be specified therein. It is well known that in the general conduct of affairs of corporations it is customary for the corporate officers to perform many acts that partake of agreements or consents, as may be for the best interest of the corporation, and it would be unreasonable to suppose that every act of regularly constituted officers of a corporation must have specific approval by vote of the Board of directors. A consent to a determination and assessment of whatever tax may be due by the corporation beyond the period specified in the statute is nothing more than approval by the officer or officers of a corporation of a policy to be pursued in the conduct of affairs of a corporation in respect of such matters or the concurrence or acquiescence by such officer on behalf of the corporation to the performance by the Commissioner at a later date of an act which the statute prescribes shall otherwise be performed by him within a specified time. There is no element of bargain in the execution of a consent for a later determination and assessment of a tax imposed by Congress.

See also *Wirt Franklin*, 7 B. T. A. 636.

While the by-laws expressly provide that "Both officers shall have authority to execute deeds, assignments, releases and other instruments in connection with the conduct of the business of the company," there is no evidence in the record indicating that either the president or the chairman of the board of directors construed such by-law to mean that "both" the president and chairman must sign or execute all "deeds, assignments, releases and other instruments in connection with the conduct of the business of the company," as now argued in behalf of petitioner. No one testified that such was the practice or custom, or that any such paper was ever so signed. The object of the by-laws in conferring authority on "both" the president and chairman of the board of directors was evidently, as may be inferred from the statement of the president in recommending that the office of chairman of the board of directors be created, that either might exercise the authority which was conferred on "both." It was to relieve the president of some of the work, not to require him to join the chairman, or the chairman to join him, in the execution of all such instruments. Each drew the same salary. Both possessed the same authority, which either might exercise. Such, we think, is clearly indicated by the evidence.

We are of the opinion that the deficiencies are not barred, and the plea of the statute of limitations is accordingly denied.

The proceeding will be restored to the calendar for hearing on the merits in due course.

Reviewed by the Board.

*Order will be entered accordingly.*

Love, dissenting: I do not agree with the decision or the opinion in this case.

The only issue involved in this proceeding is whether or not the assessment and collection of the deficiency in tax asserted by the Commissioner is barred by the statute of limitations.

It is conceded that, in the absence of an agreement to extend the time in which such assessment and collection could legally be made, that limitation has interposed a bar. The Commissioner asserts that such an agreement, executed by himself and the taxpayer, was made, and the Commissioner relies on such agreement. The petitioner pleads the statute of limitations and urges that it never executed nor authorized the execution of such agreement. The real question at issue, therefore, is whether or not the document in evidence and relied on by the respondent as an agreement by and between himself and the petitioner and admittedly signed by Geo. W. Jalonick, who was chairman of the petitioner's board of directors, is an act of the corporation such as will bind it in the absence of any act of ratification.

In view of the fact that some people entertain a prejudice against a plea of limitation (and before proceeding further I wish to make it plain that I do not mean to intimate that any Member of the Board entertains any such prejudice), I wish to point out that in dealing with income-tax matter, Congress realized and recognized the fact that to leave the collection of such tax without a limitation statute, with the returns subject to be reopened and the tax liability redetermined for an indefinite time, would thrust business operations into chaos and work an intolerable hardship on the taxpayer. Congress enacted the statute of limitation as a bar to such procedure. It is a defense that is just as moral and legitimate a plea as a claim for depreciation on physical assets. Each and both claims are founded on statutory rights granted the taxpayer, and without a statute granting such right neither could be successfully claimed.

The plea of limitation is a purely legal defense, and no equity rules or presumptions may be invoked. It must stand or fall under the "cold steel" of the law. I assume that it is conceded that the governing head of a corporation is its board of directors, and that no contractual document is binding on the corporation unless authorized by the board of directors. I also assume that it is conceded that no officer of a corporation or other person, by his action, can bind a corporation without being duly authorized to so act by the board of directors. It may be argued that the board of directors

may act in such a way as to lead reasonably prudent persons to assume authority granted to certain officers or individuals, and that under such circumstances the board of directors will not be permitted to deny such authority.

That situation involves the doctrine of estoppel, and estoppel must be especially pleaded, as such, and the necessary elements of the plea sustained by affirmative evidence. The courts, under those circumstances, do not hold that the act of the person involved was authorized, but simply hold that the board of directors knowingly acted in such a way as to mislead the complaining party to his injury and sustain the plea of estoppel.

Under general corporation law the chairman of the board of directors, as such, has authority to do nothing except to preside over meetings of the directors and sign the minutes of such meetings. Some courts have held that when a document is signed by the president of a corporation and has the corporate seal affixed and has been made public or delivered, in the absence of a timely repudiation of his authority on the part of the directors, it will be conclusively presumed that the president has been duly authorized thereunto. I know of no case where a court has authorized such a presumption in regard to any officer other than the president.

In the instant case the document in question was not signed by the president of the corporation. It was signed by " Geo. W. Jalonick, Chairman."

Without quibbling over the technical feature that the document fails to disclose what Geo. W. Jalonick was chairman of, I may again point out that as chairman of the board of directors he had no authority, either actual or presumptive, to execute, on the part of the corporation, the document involved.

The Commissioner, when he received that document, was charged with notice that it had not been signed by the officer who according to custom as well as law is usually given authority to sign such documents, and was put upon inquiry to ascertain whether or not Geo. W. Jalonick had been so authorized. Had the Commissioner pursued such inquiry, he would have discovered in the minutes of the corporation the amendments to the by-laws adopted January 26, 1922, four years prior to the date of the so-called agreement, section 4 of which by-laws reads as follows:

The chairman of the board of directors and the president, acting together, shall exercise general supervision and control of the company. Both officers shall have authority to execute deeds, assignments, releases and other instruments in connection with the conduct of the business of the company.

By that section of the by-laws, it is specifically and expressly enacted that the chairman and the president, acting together, shall

exercise the management and control of the business of the corporation. Where joint authority is so granted and in the absence of a specific provision that each may act alone, it is fundamental that both must act together, and that the action of either, alone, is not binding. But in the prevailing opinion it is argued that the sentence in the by-laws which says that "Both officers shall have authority to execute deeds, assignments, releases and other instruments in connection with the conduct of the business of the company," means that each should have authority to sign such instruments in connection with the conduct of the business of the company.

It may sometimes occur in informal conversation that the term "both" will be used where "each" is meant, but I can not believe that such loose language would be used by a group of business men in a document as formal as by-laws of a corporation are supposed to be.

It is further urged that there was no evidence that "each" was not meant where the word "both" was used.

The document was placed in evidence and the language of that document, as I construe the English of it, on its face clearly negatives the idea that "each" was meant where "both" is used, which made for petitioner a *prima facie* case on that point and shifted the burden of proof to the respondent to prove the contrary. Geo. W. Jalonick was on the stand as a witness and he was not interrogated in regard to that matter. Estoppel was not pleaded in this case and there is no element of estoppel in the evidence.

Believing as I do, that tax cases, like all other cases, should be decided according to the laws applicable thereto; and believing as I do that the law applicable to the case at bar demands a decision in favor of petitioner on its plea of limitation, I feel it my duty to dissent from the prevailing opinion and to record my reasons for such dissent.